672 So.2d 181 (1996)
Jerry W. LeCROY
v.
BRAND SCAFFOLD BUILDING, INC.
Joseph V. BENNETT
v.
BRAND SCAFFOLD BUILDING, INC.
Nos. 95 CA 1522, 95 CA 1523.
Court of Appeal of Louisiana, First Circuit.
February 23, 1996.
Rehearing Denied May 8, 1996.
*182 Joseph W. Looney, New Orleans, for Appellant Brand Scaffold Bldg., Inc.
Joseph H. Simpson, Amite, for Appellee Jerry W. Lecroy (Deidra Lecroy, et al).
Ron S. Macaluso, Hammond, for Appellee Joseph V. Bennett (Phyllis Bennett, et al).
Before WATKINS, FOIL and TANNER,[*] JJ.
FOIL, Judge.
Plaintiffs, the widows and dependents of two workers who were killed, brought these consolidated suits to recover benefits under the Louisiana Workers' Compensation Law. The trial court awarded benefits and the employer appealed. Plaintiffs also appealed, challenging the amount of the death benefits awarded. We affirm.

FACTS
Joseph Bennett and Jerry LeCroy were employees of Rust Scaffold Builders, Inc.[1] They were killed in an automobile accident which occurred at approximately 4:45 p.m. on May 7, 1993, on I-59, a few miles north of its junction with I-12 in St. Tammany Parish. Their vehicle was traveling north in the left-hand lane of the divided highway when it was struck head-on by another vehicle that crossed over the grass median from the opposite *183 direction. The men were returning to the job site at the Amerada Hess plant in Purvis, Mississippi, for the shift which began at 6:00 p.m. They were about 63 miles away when the accident occurred. Marijuana was found in the wrecked vehicle and blood tests revealed the presence of the drug in the systems of both men. There was further evidence that the drug had been ingested shortly before their deaths. The tests also showed that Mr. LeCroy's blood alcohol content was 0.09, just below the legal limit.
Decedents' spouses and dependents filed claims for death benefits and funeral expenses with the Office of Workers' Compensation. They alleged entitlement to benefits, claiming that decedents were in the course and scope of their employment when they were killed. Rust denied the claims.
The hearing officer found that a $25 per diem payment Rust made to employees who lived 100 miles or more from the job site constituted reimbursement for travel expenses and, therefore, decedents were within the course and scope of their employment at the time of the accident. Further, the officer found that decedents' intoxication did not contribute to the occurrence of the accident. Judgment was rendered in favor of plaintiffs and the defendant employer appealed, challenging the correctness of both findings. Plaintiffs also appealed, contesting the amount of the awards.

STANDARD OF REVIEW
The jurisprudence clearly establishes that in workers' compensation cases, the appropriate standard of review to be applied by appellate courts is the "manifest error clearly wrong" standard. In order to determine whether there was manifest error, the record must be reviewed in its entirety. Alexander v. Pellerin Marble & Granite, 93-1698 (La. 1/14/94); 630 So.2d 706, 710.

TRAVEL
Generally, an employee is outside the course of employment until he reaches the employer's premises. However, an exception to the rule that employees are not in the course of employment going to and from work is recognized when transportation is furnished as an incident of employment, either through a vehicle, a conveyance and driver, or payment of expenses. Michaleski v. Western Preferred Casualty Company, 472 So.2d 18, 20 (La.1985).
The record shows that the employer in this case paid a $25.00 per diem to employees who lived 100 miles or more from the job site. The defendant claimed that this sum was not a travel allowance, but was a salary supplement intended as an inducement to attract employees to the job site. The hearing officer noted, however, that this pay was classified as a non-taxable item by the employer, not as compensation subject to taxation. It was listed as a "travel expense" on both employees' payroll check stubs. The hearing officer concluded that, based on all of the evidence and testimony, the $25.00 per diem was classified as reimbursement for travel expenses, thereby placing the employees within the course and scope of their employment when the accident occurred. Our review of the record in its entirety reveals no manifest error in this finding.

INTOXICATION
Under La.R.S. 23:1081, employee intoxication is a defense to an employer's workers' compensation liability. The statute expressly places the burden of proving the defense on the employer. However, simply proving intoxication will not suffice. Rather, the employer must show the employee's intoxication caused the accident. Faught v. Ryder/P*I*E Nationwide, Inc., 543 So.2d 918, 920 (La.App. 1st Cir.), writ denied, 545 So.2d 1040 (La.1989).
In written reasons for judgment, the hearing officer in this case found as follows:
There was no evidence as to the conduct of these two employees and there was no evidence to indicate that their vehicle was being operated in an improper or illegal manner. The way this accident happened it is clear that the employees were in the wrong place at the wrong time and that their condition as to whether they were intoxicated or not did not contribute to the accident.
*184 On appeal, defendant claims the evidence concerning decedents' marijuana and alcohol use was not being offered to establish the intoxication defense provided in La.R.S. 23:1081, but rather to defeat coverage under the course and scope of employment issue. In other words, defendant asserts that the transportation and use of drugs by the decedents was conduct both criminal and anti-employer in nature. It argues that the existence of criminal conduct defeats coverage because the injury associated with that conduct does not "arise out of" and is not "in the course of" employment. Defendant contends that the exclusionary effect of criminal conduct on workers' compensation coverage is not conditioned on the intoxication statute and, thus, whether or not the drugs caused the accident is irrelevant. It argues that the hearing officer erred in holding otherwise.
In support of its assertions on this issue, defendant cites the case of Williams v. Regional Transit Authority, 546 So.2d 150 (La. 1989). That case involved an employee's claim for benefits based on post-traumatic stress disorder following his alleged improper arrest on charges of misappropriation of funds from his job as a streetcar operator. Defendant directs our attention to a portion of that opinion in which the court stated:
The risk of injury created by an employee's own criminal conduct is not the type of risk that can be fairly assigned to the employment. Even if employment conditions create or provide an opportunity for an employee to engage in criminal conduct, the employee's anti-employer criminal violation cannot be said to arise out of the employment.
Id. at 159. However, in so stating, the court was referring to a circumstance in which the risk of arrest does not arise out of employment, namely, when the charges are employment related (e.g., theft of the employer's funds) but the employee is actually guilty of the charged misconduct. In fact, in a footnote, the court stated further:
Our discussion regarding criminal conduct refers only to situations where the employee deliberately oversteps the boundaries of his employment by committing a crime, and not to an employee's mere act of violating a civil or criminal statute while attempting to perform legitimate employment duties, e.g., speeding while operating a motor vehicle in the course of employment. In the latter case, the violation of the law is incidental to the negligence of the employee in attempting to perform his employment duties, and any resulting injury arises out of employment.
[Citation omitted.] Id. at 159, n. 6.
While drug use is arguably a more flagrant criminal violation than speeding, we nevertheless find this case comparable to the example noted by the court. As such, after reviewing the entire record, we find no manifest error by the hearing officer on the issue of intoxication as there was simply no evidence that decedents' drug use caused or contributed to the accident.

COMPUTATION OF AWARD
Plaintiffs also appealed in this case, arguing that the hearing officer incorrectly applied the "cap" provided in La.R.S. 23:1202 to the death benefits awards. They contend that the compensation owed should be based on the average weekly wage as provided in Subpart C entitled "Death Benefits," specifically La.R.S. 23:1231 and 1232, without regard to section 1202 which is not located in that subpart. We disagree. Section 1202 is contained in Subpart A concerning the general provisions relative to all benefits, which necessarily includes death benefits. That section deals with the maximum and minimum amounts payable "under this Chapter," referring to Chapter 10 which is the entire body of workers' compensation law. We find that the hearing officer correctly computed the amounts of the benefits due in this case.

CONCLUSION
For the foregoing reasons, the judgment of the hearing officer is affirmed. Costs of this appeal are assessed to defendant.
AFFIRMED.
NOTES
[*] Judge Thomas W. Tanner, retired, is serving as judge pro tempore by special appointment of the Louisiana Supreme Court.
[1] Rust Scaffold Services, Inc. formerly did business under the name "Brand Scaffold Services, Inc." which was the name used throughout this litigation. Rust filed a motion to correct the record under La.Code Civ.P. art. 2088, which was granted by the hearing officer on May 15, 1995. Consequently, the employer shall be referred to as "Rust" throughout this opinion.